# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

FILED ORIGINAL
U.S.D.C. - Newnan
JUL - 2 2009
James N. Hatten
By: Deputy Clerk

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) **FILED UNDER SEAL** |
| Plaintiff, | ) ) ) |
| v. | CASE NO. 3 09-CV-75 TWT ) ) |
| ELDON A. GRESHAM (a/k/a ELDON A. GRESHAM, JR.) d/b/a THE GRESHAM COMPANY, | ) ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| WERNER H. BEIERSDOERFER, INTERVESTON WINES, LLC, and KIRK M. GRESHAM, | ) ) ) ) |
| Relief Defendants. | ) ) |

## COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff U.S. Commodity Futures Trading Commission (Commission)

alleges as follows:

1

## I.   SUMMARY

1.   From at least January 2004 to the present, defendant Eldon A. Gresham d/b/a The Gresham Company (Gresham) has orchestrated and operated a massive Ponzi scheme.  As part of this scheme, Gresham has solicited at least $15 million from more than seventy-five members of the general public for the purported purpose of trading off-exchange foreign currency contracts (forex).

2.   Gresham informed prospective customers that because of his purported success in trading forex, Gresham would be able to generate tremendous monthly returns—ranging between approximately five and ten percent.  Further, he told existing customers that he was making between four and thirteen percent a month for them.

3.   Gresham, however, lost money in the limited forex trading in which he engaged.  Any purported profits paid to Gresham's customers came from either existing Gresham customers' original investments or money invested by subsequent Gresham customers.  It appears that, at most, slightly over $2 million of the more than $15 million that Gresham solicited from customers was deposited into Gresham's forex trading accounts.  Of this slightly over $2 million amount, more than $1.4 million was withdrawn by Gresham.  At least $14.4 million, therefore, was

2

either misappropriated by Gresham or returned to Gresham customers as part of the Ponzi scheme.

4.    Prospective customers were told that Gresham's trading program involved very little risk.  In addition, Gresham consistently communicated bogus monthly returns to Gresham customers through e-mails.

5.    By virtue of this conduct and the further conduct described herein, Gresham has engaged, is engaging, or is about to engage in acts and practices in violation of the Commodity Exchange Act (the Act), 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 (CRA), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008).

6.    Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin Gresham's unlawful acts and practices and to compel his compliance with the Act and to further enjoin Gresham from engaging in certain commodity or forex-related activity.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans,

3

restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

7.    In addition, relief defendants Werner H. Beiersdoerfer (Beiersdoerfer), Interveston Wines, LLC (Interveston), and Kirk M. Gresham (Kirk Gresham) each received ill-gotten gains to which they do not have a legitimate claim as a result of the fraud committed by Gresham and, therefore, must repay these funds.

8.    Unless restrained and enjoined by this Court, Gresham likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.    JURISDICTION AND VENUE

9.    Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

10.   The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c of the Act and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

4

11.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Gresham transacted business in the Northern District of Georgia and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.  PARTIES

12.  Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with the administration and enforcement of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 1 *et seq.* and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009). The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

13.  Defendant **Eldon A. Gresham (a/k/a Eldon A. Gresham, Jr.) d/b/a The Gresham Company** is an individual residing in Peachtree City, GA 30269. Gresham is the owner and operator of The Gresham Company and, at all times relevant to this Complaint, he held himself out to the public as such.  Gresham has never been registered with the Commission in any capacity.

14.  Relief defendant **Werner H. Beiersdoerfer** (Beiersdoerfer) has a last known address in Calera, Alabama.  Between 2004 and 2009, Beiersdoerfer

received more than $4.4 million in customer funds from Gresham.  Beiersdoerfer

has never been registered with the Commission in any capacity.

15.   Relief defendant **Interveston Wines, LLC** (Interveston) is a Georgia

Limited Liability Company located in Calera, Alabama 35040.  Beiersdoerfer

owns Interveston.  Between 2004 and 2009, Interveston received more than

$145,000 in customer funds from Gresham.  Interveston has never been registered

with the Commission in any capacity.

16.   Relief defendant **Kirk Gresham** has a last known address in Newnan,

Georgia.  Kirk Gresham is Eldon Gresham's son.   Between 2004 and 2009, Kirk

Gresham received more than $413,000 in customer funds from Gresham.  Kirk

Gresham has never been registered with the Commission in any capacity.

## IV.   FACTS

17.   Gresham began trading forex in 2002 with his long-time friend,

Beiersdoerfer, who helped Gresham get started by giving him money to trade

forex.  From at least January 2004 and continuing to the present, Gresham has

solicited members of the general public, specifically targeting people of the

Christian faith, to provide funds to trade forex.  In exchange for money to trade

forex, Gresham provides customers a promissory note entitled "Investment

Agreement" in which he promises to return to customers their principal investment

6

amount, plus a specified percentage of the profits he makes trading with that money.   The term of the promissory notes was six months in the early stages of the scheme and eventually increased to one year.

18.   Gresham told customers that he and his son, Kirk Gresham, each received a $5,000 scholarship for a forex trading course they took in 2002. Gresham stated to customers that, since that course, he successfully has traded forex without experiencing a single losing month.

19.   Gresham explained to customers that he has a formula or strategy for forex trading that allows him to make money whether the market is "up, down, or sideways."  Gresham also stated that he was very successful trading forex because, purportedly, the "Lord had blessed him."  Gresham told prospective customers that he was offering his program to a limited number of fellow Christians for a limited time.

20.   Gresham promises prospective customers a five to ten percent average monthly return on investment.  Gresham told at least one prospective customer that he could triple her investment in one year.

21.   Gresham also told customers that their risk was limited because he was a conservative trader.  In addition, Gresham told at least one customer that her

investment with Gresham is insured by the federal government and the biggest

forex exchange in the United States.

22.  Gresham represented to customers that Kirk Gresham works with him

and would be able to take over Gresham's customers if something should ever

happen to Gresham.  For the last eighteen months, Kirk Gresham has maintained

an office with Gresham.  Kirk Gresham traded forex, unsuccessfully, in seven

different accounts at a futures commission merchant (FCM) between October 2007

and December 2008.

23.  Gresham solicited some customers to invest by opening and supposedly

funding an account for them based on their friendship with him over the years.

After receiving a string of e-mail statements showing purported extraordinary

monthly returns in these accounts purportedly funded with customer funds, these

investors began to contribute their personal funds into their accounts with

Gresham.

24.  Gresham persuaded some customers to temporarily withdraw retirement

funds by telling them that he could earn five to ten percent a month on these funds

through forex trading.  Gresham promised these customers he would quickly attain

profits in less than sixty days and return their principal so the customers would

have time to transfer the principal (and the large profits, if they so desired) back

into a new individual retirement account before the twenty percent early withdrawal tax penalty would be assessed.

25.   Beiersdoerfer also purportedly contributed money to certain investors' accounts to show his appreciation for all they had done for Gresham in the past. Beiersdoerfer took several existing and prospective Gresham customers and their wives on lavish trips to mountains in Tennessee and the beach in Florida.  During the trips, Beiersdoerfer shared with existing and prospective Gresham customers how well he had done investing with Gresham.  Beiersdoerfer told them that Gresham always makes money trading forex.

26.   As a result of his solicitations, Gresham received more than $15 million from more than 75 customers to trade forex.  Despite Gresham's representations to customers about using their funds to trade forex, the vast majority of customer funds were never used to trade forex; rather, the vast majority of the customer funds were either misappropriated or paid to certain customers in furtherance of the Ponzi scheme.  As the sole signatory, Gresham controls the bank account in which Gresham customer funds are received, paid out to certain Gresham customers, or misappropriated.

27.   Gresham never has been a successful forex trader.  Gresham has traded forex, unsuccessfully, in nineteen different accounts in his own name at FCMs and other forex dealers between January 2003 and the present.

28.   Gresham opened four trading accounts at Concorde Forex Group between January 2003 and August 2004; four trading accounts at Forex Capital Markets, LLC, a registered FCM, between August 2007 and April 2009; nine trading accounts at Gain Capital Group, LLC (Gain Capital), a registered FCM, between October 2007 and June 2008; and two trading accounts at Interbank FX in October 2007.

29.   Of the more than $15 million solicited by Gresham to trade forex, only approximately $2 million, at most, of Gresham customers' money ever was deposited into one of Gresham's forex trading accounts, and, of this amount, more than $1.4 million was withdrawn and another approximately $90,000 was lost trading forex.  Accordingly, any returns provided to Gresham customers came from either existing Gresham customers' original investments or money invested by subsequent Gresham customers.  Gresham, thus, operates a Ponzi scheme, misappropriating millions of dollars of customer funds.

30.   Despite Gresham's extremely poor forex trading record, Gresham made oral and written misrepresentations to Gresham customers about, among other

things, forex trading that purportedly occurred on behalf of Gresham customers, Gresham customer account balances, and returns on investment that Gresham customers purportedly enjoyed.

31.   In addition, Gresham e-mailed false account statements to customers showing fictitious monthly returns of between approximately four and thirteen percent on their forex investments.

32.   As the Bernard Madoff Ponzi scheme unfolded in the media in late 2008, Gresham communicated to concerned customers that all their funds with Gresham were safe and would be returned to them when due.  These statements were and continue to be false.  Gresham has never had sufficient funds on hand to return all customers' principal and purported returns on investment.

33.   Beginning in May or June 2009, a number of Gresham customers asked for their funds from Gresham.  Upon information and belief, none of the customers who asked for the funds in his or her Gresham account has received them.

34.   Neither Gresham nor the FCMs that were the counterparties to the foreign currency transactions were financial institutions, registered broker dealers (or their associated persons), insurance companies, bank holding companies, or investment bank holding companies.

35. Some or all of Gresham's customers were not "eligible contract participants" as that term is defined in the Act. *See* Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12) (2006) (an "eligible contract participant," as relevant here, is an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual").

36. The foreign currency transactions conducted by Gresham at FCMs on behalf of Gresham's customers, were entered into on a leveraged or margined basis. Gresham was required to provide only a percentage of the value of the foreign currency contracts that he purchased.

37. The foreign currency transactions conducted by Gresham at FCMs neither resulted in delivery within two days nor created an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery, respectively, in connection with their lines of business; rather, these foreign currency contracts remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

38.   By virtue of his actions, Gresham has engaged, is engaging, or is about to engage in acts and practices that violate Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C).

39.   Pursuant to federal common law, Beiersdoerfer, Interveston, and Kirk Gresham are relief defendants because each have received ill-gotten funds from Gresham's fraudulent conduct to which they do not have a legitimate claim and, therefore, must disgorge all ill-gotten gains regardless of whether they actually violated the Act themselves.

## V.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

**Violations of Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA,
to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C)
(Fraud by Misrepresentations, False Statements, and Omissions)**

40.   The allegations set forth in paragraphs 1 through 39 are realleged and incorporated herein by reference.

41.   Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C), makes it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract , or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to

13

enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for or, in the case of paragraph (2), with the other person.

Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, applies to Gresham's

forex transactions "as if" they were contracts of sale of a commodity for future

delivery. Section 2(c)(2)(C)(iv) of the Act, as amended by the CRA, to be codified

at 7 U.S.C. § 2(c)(2)(C)(iv).

42. As set forth above, from at least June 18, 2008 through the present, in

or in connection with forex, made, or to be made, for or on behalf of other persons,

Gresham cheated or defrauded or attempted to cheat or defraud customers or

prospective customers; willfully made or caused to be made false reports or

statements to another person; willfully deceived or attempted to deceive customers

or prospective customers by, among other things, knowingly (i) misappropriating

customer funds that purportedly were to be used to trade forex; (ii) misrepresenting

forex trading activity that purportedly occurred on behalf of Gresham customers,

and misrepresenting the source of the purported returns from Gresham's forex

trading that customers would and did receive from their investments; (iii) making,

causing to be made, and distributing reports and statements to Gresham customers

that contained false account values, false returns on investment, and other

misinformation; and (iv) misrepresenting that Gresham had sufficient funds on hand to return all customers' principal, all in violation of Section 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C).

43.   Gresham engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

44.   Beiersdoerfer, Interveston, and Kirk Gresham are relief defendants. Between 2004 and 2009, Beiersdoerfer received more than $4.4 million in customer funds from Gresham. Between 2004 and 2009, Kirk Gresham received more than $413,000 in customer funds from Gresham.  Interveston received more than $145,000 in customer funds from Gresham.  Each received ill-gotten gains as a result of the fraud committed by Gresham to which they do not have a legitimate claim and, therefore, must repay those ill-gotten gains.

45.   Each material misrepresentation, act of making or causing to be made a false report or statement, or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C).

## VI.   <u>RELIEF REQUESTED</u>

**WHEREFORE**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers, enter:

a)   An order finding that Gresham violated Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C);

b)   An order of permanent injunction prohibiting Gresham and any of his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with him, from engaging, directly or indirectly:

(i)   in conduct in violation of Section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C); and

(ii)   in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) (2006) (commodity interest), including but not limited to, the following:

(aa)   trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

(bb)   entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that

16

term is defined in Regulation 32.1(b)(1)) ("commodity options"), and/or

foreign currency (as described in Section 2(c)(2)(C)(i) of the Act as

amended by the by the Food, Conservation, and Energy Act of 2008,

Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of

2008) § 13101, 122 Stat. 1651 (enacted June 18, 2008) ("forex

contracts") for their own personal account or for any account in which

they have a direct or indirect interest;

(cc)   having any commodity futures, options on commodity

futures, commodity options, and/or forex contracts traded on their

behalf;

(dd)   controlling or directing the trading for or on behalf of any

other person or entity, whether by power of attorney or otherwise, in

any account involving commodity futures, options on commodity

futures, commodity options, and/or forex contracts;

(ee)   soliciting, receiving, or accepting any funds from any

person for the purpose of purchasing or selling any commodity

futures, options on commodity futures, commodity options, and/or

forex contracts;

17

(ff)    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2008);

(gg)    acting as a principal (as that term is defined in Regulation 3.1(a)) agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9); 17 C.F.R. § 4.14(a)(9) (2008).

c)    An order directing Gresham and Relief Defendants Beiersdoerfer, Interveston, and Kirk Gresham as well as any successors to Gresham or the Relief Defendants, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act, as amended by the CRA, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

d)    An order directing Gresham to make full restitution to every person or entity whose funds Gresham received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as amended

by the CRA, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e)     An order directing Gresham to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as amended by the CRA, as described herein;

f)     An order directing Gresham to pay a civil monetary penalty in the amount of the higher of $140,000 for each violation of the Act committed on or after October 23, 2008 and $130,000 for each violation committed before October 23, 2008, or triple the monetary gain to each defendant for each violation of the Act described herein, plus post-judgment interest;

g)     An order requiring Gresham to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

h)     Such other and further relief as the Court deems proper.

Respectfully submitted by,

David E. Nahmias
United States Attorney
Mina Rhee
Assistant U.S. Attorney
United States Attorney's Office
  for the Northern District of Georgia
75 Spring St., SW
Suite 600
Atlanta, GA 30303
(404) 581-6302
(404) 581-6163 (fax)
Mina.Rhee@usdoj.gov
Georgia Bar No. 602047

and

Rachel Hayes
Missouri Bar No. 48713
Charles D. Marvine
Missouri Bar No. 44906
U.S. Commodity Futures Trading Commission
Division of Enforcement
Two Emanuel Cleaver II Blvd., Suite 300
Kansas City, MO  64112
816-960-7741 (Hayes)
816-960-7743 (Marvine)
816-960-7750 (fax)
cmarvine@cftc.gov
rhayes@cftc.gov

ATTORNEYS FOR PLAINTIFF

Dated:  July 2, 2009