IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ELDON A. GRESHAM <br> doing business as <br> The Gresham Company <br> also known as <br> Eldon A. Gresham, Jr., et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 3:09-CV-75-TWT |

ORDER

This is an action to disgorge Ponzi scheme investment returns from relief defendants. It is before the Court on the Plaintiff's Motion for Summary Judgment Against Relief Defendants Werner H. Beiersdoerfer and Interveston Wines, LLC [Doc. 213]. For the reasons set forth below, the Court GRANTS the Plaintiff's Motion for Summary Judgment and ORDERS the Relief Defendants to comply with the Disgorgement Order detailed below.

I. Background

Between 2004 and 2009, Eldon Gresham, Jr. ("Gresham") traded off-exchange

foreign currency ("forex") on behalf of over 100 customers. Gresham convinced customers to invest money with him by representing that his forex trading program would generate large returns with very little risk. He told customers that they could withdraw their funds at any time. (Henry Aff. ¶ 5; Beiersdoerfer Dep. at 131.) In exchange for the investments, Gresham provided promissory notes and investment agreements guaranteeing a certain percentage of his profits. Although Gresham acquired over $15.9 million in customer funds, he traded only a small percentage of that total.

Customers invested $15,900,245.97 with Gresham to trade forex. Of that amount, Gresham lost $40,788.21. (Turley Aff. ¶¶ 13 & 17.) He sent $13,149,003.46 to customers in "returns." (Id. ¶ 24.) Gresham misappropriated the remaining $2,710,454.30, including spending or withdrawing $2,537,817.95 in customer money. (Id. ¶¶ 15 & 27.) When customers asked to withdraw their investment, Gresham used other customer funds to pay them. (Id. ¶ 27.)

On July 2, 2009, the Plaintiff, U.S. Commodity Futures Trading Commission ("CFTC") filed suit against Gresham, and Relief Defendants Werner Beiersdoerfer, Interveston Wines, LLC, and Kirk M. Gresham [Doc. 1]. On March 30, 2011, the Court entered a Consent Order of Disgorgement and Other Ancillary Relief Against Relief Defendant Kirk M. Gresham disposing of the claims against Kirk Gresham [See

Doc. 167]. On September 8, 2011, this Court granted the Plaintiff's Summary Judgment Motion against Gresham, enjoining Gresham from a myriad of trading-related activity and ordering him to pay a civil fine of $8,131,362.90 [Doc. 199]. The Plaintiff filed this Motion for Summary Judgment against Relief Defendants Werner H. Beiersdoerfer, Elaine Beiersdoerfer, and Interveston Wines, LLC on November 3, 2011 [Doc. 213]. Relief Defendant Elaine Beiersdoerfer was dismissed on December 16, 2011 [Doc. 221].[1] Werner Beiersdoerfer invested $950,100 with Gresham for forex trading and received $6,461,456.02 from Gresham in purported investment "returns," for a net profit of $5,511,356.02. (Turley Aff. ¶ 10; Beiersdoerfer Dep. at 93-95.) Interveston Wines, LLC invested $150,000 with Gresham and received $199,516.50, for a net profit of $49,516.50. (Turley Aff. ¶ 11.) In the conclusion of its Brief in Support of its Summary Judgment Motion, the Plaintiff seeks $5,158,634.95 in disgorgement from Werner Beiersdoerfer and $49,516.50 in disgorgement from Interveston Wines, LLC. (Pl.'s Br. in Supp. of Mot. for Summ. J., at 12.) The Plaintiff wants these moneys distributed to all Gresham customers who lost money as a result of Gresham's scheme on a *pro rata* basis.

---

[1]The Plaintiff states that Elaine Beiersdoerfer invested via her husband, and profited primarily by constructing a house in her name. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 2 n.2.) This house has since been transferred to Werner Beiersdoerfer. (Pl's Br. in Supp. of Mot. to Dismiss Elaine Beiersdoerfer, at 3.) Werner Beiersdoerfer cannot dispose of the house [Doc. 221].

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

In an enforcement proceeding brought by the CFTC, the Court's jurisdiction under 7 U.S.C.A. §13-a-1 includes equitable remedies such as restitution and disgorgement. Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1344 (11th Cir. 2008). One such equitable remedy is the ordering of disgorgement from a relief defendant. Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 191-92 (4th Cir. 2002); SEC v. George, 426 F.3d 786, 798 (6th Cir. 2005). The Relief Defendants argue that the CFTC is not

entitled to disgorge all of the profits they derived from Gresham's Ponzi scheme. The Court addresses each of the Relief Defendants' arguments in turn.

### A. CFTC Jurisdiction

The Relief Defendants argue that the CFTC does not have the authority to bring this action as to many of Gresham's transactions. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 9-13.) Specifically, the Relief Defendants argue that 7 U.S.C.A. § 2(f) restrains the Plaintiff so that it can only seek disgorgement against investors who received investment accounts as opposed to promissory notes. The Court already determined that the CFTC has jurisdiction over Gresham's forex trades, including the promissory notes given by Gresham in exchange for client funds pursuant to 7 U.S.C.A. § 2(c)(2)(C), and 7 U.S.C.A. § 6b(a)(2) [Doc. 199, at 5-7]. The Court does not accept the Relief Defendants' argument that 7 U.S.C.A. § 2(f) limits the Plaintiff's jurisdiction in this case.

7 U.S.C.A. § 2(f) restricts the CFTC's jurisdiction over a "hybrid instrument that is predominantly a security." 7 U.S.C.A. § 2(f)(2) is inapplicable to the case at bar, as promissory notes are not "hybrid instruments." A "[h]ybrid instrument means an equity or debt security or depository instrument as defined in § 34.3(a)(1) with one or more commodity-dependent components that have payment features similar to commodity futures or commodity option contracts or combinations thereof." 17

C.F.R. § 34.2(a). The Relief Defendants' promissory notes have no "commodity-dependent component." "A commodity-dependent component means a component of a hybrid instrument, the payment of which results from indexing to, or calculation by reference to, the price of a commodity." 17 C.F.R. § 34.2(d). The Relief Defendants do not even argue that there is a commodity-dependent component to the promissory notes. The Relief Defendants do argue that the promissory notes are a "security," but this does not meet the definition of a "hybrid instrument that is predominantly a security," which is necessary to trigger 7 U.S.C.A. § 2(f)(2). The CFTC can have jurisdiction over fraud in connection with securities. Simply because the SEC may also have jurisdiction does not mean that the CFTC cannot have concurrent jurisdiction. See, e.g., SEC v. Unique Fin'l Concepts, 196 F.3d 1195, 1202 (11th Cir. 1999).

B.  Possession of Funds Is Not Required for Disgorgement

The Relief Defendants argue that the CFTC can only disgorge those assets or funds that were in their possession at the time they learned of the fraud. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 2-6). The Court disagrees. Federal courts order equitable relief against a relief defendant where the individual or entity: (1) receives ill-gotten funds; and (2) does not have a legitimate claim to the funds. [Doc. 73, at 5]; George, 426 F.3d at 798; Kimberlynn Creek Ranch, 276 F.3d at 192. "An

individual may be a proper relief defendant even if she does not possess the actual ill-gotten gains if she previously received benefits that were derived from another person's unlawful conduct." SEC v. Aragon Capital Advisors, No. 07-CV-919, 2011 WL 3278907, at *18 (S.D.N.Y. July 26, 2011); see also George, 426 F.3d at 791. The cases cited by the Relief Defendants do not support the conclusion that relief defendants must possess the ill-gotten gains.

Moreover, the CFTC is not required to trace the specific funds in the Relief Defendants' bank accounts to Gresham's fraud. The Relief Defendants' frozen accounts are less than their ill-gotten gains. In such a situation, the CFTC "is not required to trace specific funds to their ultimate recipients...because the balance in the account after the distributions was less than the amount of illicit profits, the distributions must necessarily have contained funds subject to disgorgement." SEC v. Rosenthal, 426 Fed. Appx. 1, 1-2 (2d Cir. 2011); see also SEC v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006).

  C. <u>The Relief Defendants Are Not Legitimately Entitled to Any Profits Derived From Investment in Gresham's Ponzi Scheme</u>

The Relief Defendants argue that they are legitimately entitled to assets derived from Gresham's Ponzi scheme. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J, at 6.) "When claims are brought against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of

principal that they originally invested, those payments are avoidable as fraudulent transfers." SEC v. Forte, No. 09-63, 2010 WL 939042, at *5 (E.D. Pa. Mar. 17, 2010) (internal quotations omitted). If the CFTC can show that the funds the Relief Defendants received came from the investments of others, rather than profits on their investment, the Relief Defendants have no legitimate claim to the funds [Doc. 73]. However, if a relief defendant has a legitimate claim to the payments, then the court should not grant disgorgement. See, e.g., Commodity Futures Trading Comm'n v. Walsh, 658 F.3d 194, 197 (2d Cir. 2011); SEC v. Sun Capital, Inc., No. 2:09-CV-229, 2009 WL 1362634, at *2 (M.D. Fla. May 13, 2009).

The CFTC has shown that the Relief Defendants' returns came from the investments of others. The Relief Defendants were investors in Gresham's Ponzi scheme, through which Gresham did very little actual trading. The Relief Defendants have not produced any evidence demonstrating that they are legitimately entitled to the Ponzi scheme profits. They were investors, not creditors of the Ponzi scheme, and thus do not have a legitimate ownership interest in the Ponzi scheme assets. (W. Beiersdoerfer Dep. at 9-10, 277-78); Compare Janvey v. Adams, 588 F.3d 831 (5th Cir. 2009) (debtor-creditor relationship existed) with Aragon Capital Advisors, 2011 WL 3278907, at *20, and SEC v. Illarramendi, No. 3:11-CV-78, 2011 WL 2457734, at *5 (D. Conn. June 16, 2011) (no debtor-creditor relationship existed; relief

defendants were investors in the Ponzi scheme).  Other cases cited by the Relief Defendants are inapposite.  The Relief Defendants did not receive the ill-gotten gains in a divorce settlement, Walsh, 618 F.3d at 196, and did not perform any services for Gresham.  Commodity Futures Trading Comm'n v. Hanover Trading, 34 F. Supp. 2d 203, 207 (S.D.N.Y. 1999); (W. Beiersdoerfer Dep. at 277-78.)

     D.     The CFTC Does Not Have to Sue All Possible Relief Defendants

The Relief Defendants argue that the CFTC should have to bring claims against all investors who were "winners" in the Gresham Ponzi scheme, or bring claims against none of them.  (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 8-9.)  The Court disagrees [see Doc. 73, at 7 n.3].

     E.     Oral Argument

The Court denies the Relief Defendants' request for oral argument.

     F.     Disgorgement Order

The Monitor, the National Futures Association, shall collect disgorgement payments from Werner Beiersdoerfer and Interveston Wines, LLC, place those payments in an interest-bearing account, and make distributions to the Gresham customers in the same manner as set forth in the Kirk Gresham Consent Order.  Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, the Monitor shall not be liable

for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

Any acceptance by the CFTC and/or Monitor of partial payment of the disgorgement obligation shall not be deemed a waiver of Werner Beiersdoerfer's and/or Interveston Wines, LLC's requirements to make further payments pursuant to this Order or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

Werner Beiersdoerfer shall pay disgorgement in the amount of $5,158,634.95, plus post-judgment interest, to the Gresham customers identified in Attachment A to the Kirk Gresham Consent Order. Interveston Wines, LLC shall pay disgorgement in the amount of $49,516.50, plus post-judgment interest, to the Gresham customers identified in Attachment A to the Kirk Gresham Consent Order. All of Werner Beiersdoerfer's and Interveston Wines, LLC's disgorgement obligations are immediately due and owing.

Werner Beiersdoerfer's initial disgorgement payment shall consist of all money in the frozen accounts referenced in the first table below. Because the total amount of funds in these accounts is less than $5,158,634.95, Werner Beiersdoerfer shall pay the shortfall to the Monitor within ten days of being notified of such shortfall. If Werner Beiersdoerfer fails to pay in full the shortfall within ten days of being notified

of such shortfall by the Monitor, then post-judgment interest shall accrue on this shortfall beginning as of the date of this Order's entry and shall be determined by using the Treasury Bill rate prevailing on the date of this Order's entry, pursuant to 28 U.S.C. § 1961(a).

Interveston Wines, LLC's initial disgorgement payment shall consist of all money in the frozen accounts referenced in the second table below. Because the total amount of funds in these accounts is less than $49,516.50, Interveston Wines, LLC shall pay the shortfall to the Monitor within ten days of being notified of such shortfall. If Interveston Wines, LLC fails to pay in full the shortfall within ten days of being notified of such shortfall by the Monitor, then post-judgment interest shall accrue on this shortfall beginning as of the date of this Order's entry and shall be determined by using the Treasury Bill rate prevailing on the date of this Order's entry, pursuant to 28 U.S.C. § 1961(a).

Upon issuance of this Order, the CFTC shall promptly provide each of the financial institutions identified in the first table below with a copy of this Order. Within thirty days of receiving a copy of this Order, each of the financial institutions identified in the first table are specifically directed to liquidate and release all funds in any account identified below, whether the account is held singly or jointly, or in any other capacity, and to convey by wire transfer to an account designated by the

Monitor, all funds in these accounts, less any nominal amounts required to cover the financial institutions' administrative or wire transfer fees. At no time during the liquidation, release and/or wire transfer of these funds pursuant to this Order shall Werner Beiersdoerfer be afforded any access to, or be provided with, any funds from these accounts. Werner Beiersdoerfer and all banks and financial institutions listed in this Order shall cooperate fully and expeditiously with the CFTC and the Monitor in the liquidation, release, and wire transfer of these funds. The accounts to be liquidated, released, and transferred are:

| Name | Financial Institution | Account Number | Approx. Balance (as of September 2011) |
|---|---|---|---|
| Werner Beiersdoerfer | Regions Bank | xxxxx59 | $24,110.94 |
| Werner Beiersdoerfer Construction Account | Central State Bank | xxxxx59 | $10,909.64 |
| Werner Beiersdoerfer | Central State Bank | xxxxxx25 | $6,226.04 |
| Werner Beiersdoerfer Construction Account | Central State Bank | xxxxxx41 | $291.39 |

Werner Beiersdoerfer's retirement account at Morgan Keegan, ending in 74 in the approximate amount of $4,151.99 is hereby released.

Upon issuance of this Order, the CFTC shall promptly provide each of the financial institutions identified in the second table below with a copy of this Order. Within thirty days of receiving a copy of this Order, each of the financial institutions identified in the second table are specifically directed to liquidate and release all funds in any account identified below, whether the account is held singly or jointly, or in any other capacity, and to convey by wire transfer to an account designated by the Monitor, all funds in these accounts, less any nominal amounts required to cover the financial institutions' administrative or wire transfer fees. At no time during the liquidation, release and/or wire transfer of these funds pursuant to this Order shall Werner Beiersdoerfer or Interveston Wines, LLC be afforded any access to, or be provided with, any funds from these accounts. Interveston Wines, LLC and all banks and financial institutions listed in this Order shall cooperate fully and expeditiously with the CFTC and the Monitor in the liquidation, release, and wire transfer of these funds. The accounts to be liquidated, released, and transferred are:

| Name | Financial Institution | Account Number | Approx. Balance (as of September 2011) |
| --- | --- | --- | --- |
| Interveston Wines, LLC | Central State Bank | xxxxx49 | $3,902.62 |

Werner Beiersdoerfer and/or Interveston Wines, LLC shall make any subsequent disgorgement payments in the name "Gresham Settlement Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to Office of Administration, National Futures Association, 300 Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies himself and the name and docket number of this proceeding. Werner Beiersdoerfer and Interveston Wines, LLC shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581; (2) the Chief Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission at the same address; and (3) Charles Marvine, Chief Trial Attorney, Division of Enforcement, Commodity Futures Trading Commission, 4900 Main Street, Suite 500, Kansas City, MO 64112.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Summary Judgment Against Relief Defendants Werner H. Beiersdoerfer and Interveston Wines, LLC [Doc. 213], and ORDERS the Relief Defendants to comply with the Disgorgement Order detailed above.

SO ORDERED, this 7 day of May, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge